Judge RYAN
delivered the opinion of the Court.
Contrary to his pleas, a military judge sitting as a general court-martial convicted Appellant of one specification of rape, in violation of Article 120, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 920 (2006), and one specification of committing an indecent act with another, in violation of Article 134, UCMJ, 10 U.S.C. § 934 (2006). The adjudged sentence provided for a dishonorable discharge, confinement for five years, forfeiture of all pay and allowances, and reduction to grade E-l. The convening authority disapproved the adjudged forfeitures but approved the remainder of the adjudged sentence, and waived the forfeiture of automatic pay and allowances for six months.
Before the United States Army Court of Criminal Appeals (ACCA), Appellant argued for the first time that his conviction for committing an indecent act with another under Article 134, UCMJ, Specification 6 of Charge II (Specification 6), should be set aside in light of the Supreme Court’s holding in Lawrence v. Texas, 539 U.S. 558, 123 S.Ct. 2472, 156 L.Ed.2d 508 (2003).[1] Appellant, however, fails to meet his burden of showing that the military judge erred, let alone plainly and obviously erred, in allowing the conduct described in Specification 6 to serve as the basis for his indecent act conviction under Article 134, UCMJ.
*204 Moreover, while the ACCA misapplied United States v. Foster, 70 M.J. 225 (C.A.A.F.2011), in its consideration of the Government’s failure to allege the terminal element of Article 134, UCMJ, in the contested specification, review of the record reveals that Appellant was not prejudiced by this error. See United States v. Humphries, 71 M.J. 209 (C.A.A.F.2012).
Accordingly, the conviction and sentence are affirmed.
I.FACTS
On August 2, 2007, German police searched Appellant’s off-post apartment pursuant to a search warrant to investigate claims of sexual assault. During the search, the police seized, among other items, a video camera and several 8-millimeter video recordings. One of the recordings depicts Appellant and an unidentified female engaged in consensual sexual activity, including intercourse, in his off-post apartment. The recording was made by an unidentified male who filmed the sexual activity while in the presence of Appellant and the unidentified female. While the recording further shows the unidentified male physically participating in the sexual activity, this participation did not form the basis of the specification at issue. At trial, the Government conceded that the participants were aware that they were being recorded and that the sexual activity was consensual.
Based on this conduct, the Government charged Appellant with, among other offenses, committing an indecent act with another, in violation of Article 134, UCMJ. The specification relating to this charge, Specification 6, reads:
In that SSG Ivan D. Goings ... did ... wrongfully commit an indecent act with another male and a female by allowing the other male to be present and video record on a video cassette tape the said SSG Ivan D. Goings engaging in sexual intercourse with the female.
Specification 6 did not allege the terminal element of Article 134, UCMJ. However, the Government argued that the evidence was prejudicial to good order and discipline in its opening statement, and presented evidence, during its case-in-chief, as to why the indecent act with another was both prejudicial to good order and discipline and service discrediting. Appellant, in turn, defended against Specification 6 on the ground that neither clause 1 nor clause 2 of the terminal element had been met, during both his cross-examination of Government witnesses and closing argument. At no time during trial did Appellant raise the argument that he was not guilty because his conduct was constitutionally protected. Instead, his defense was that his conduct was neither prejudicial to good order and discipline nor service discrediting.
II.ACCA DECISION
The ACCA summarily rejected Appellant’s Lawrence claim without discussion and held that the court-martial’s findings and sentence, as approved, were correct in law and fact. United States v. Goings, No. ARMY 20080602 (A.Ct.Crim.App. May 5, 2011). On October 14, 2011, this Court vacated the ACCA’s decision and ordered the case remanded to that court for consideration in light of United States v. Foster, 70 M.J. 225 (C.A.A.F.2011). United States v. Goings, 70 M.J. 376 (C.A.A.F.2011) (order granting review and summarily vacating the lower court’s decision). Upon reconsideration, the ACCA again held that the findings and sentence, as approved, were correct in law and fact. United States v. Goings, No. ARMY 20080602 (A.Ct.Crim.App. Feb. 7, 2012). Specifically, the ACCA found that Specification 6 “can be reasonably construed to imply” the terminal element of that charge. Id. at 2 n. 2.
III.DISCUSSION
A.
Appellant was convicted of indecent acts with another, in violation of Article 134, UCMJ. This offense consists of three elements: (1) “[tjhat the accused committed a certain wrongful act with a certain person; (2) [tjhat the act was indecent; and (3) [tjhat ... the conduct ... was to the prejudice of *205 good order and discipline ... or was of a nature to bring discredit upon the armed forces.” Manual for Courts-Martial, United States pt. IV, para. 90.b. (2005 ed.) (MCM ).[2] Indecent is defined as “that form of immorality relating to sexual impurity which is not only grossly vulgar, obscene, and repugnant to common propriety, but tends to excite lust and deprave the morals with respect to sexual relations.” MCM pt. IV, para. 90.c. As further limited by this Court’s decisions in United States v. Snyder, 1 C.M.A. 423, 4 C.M.R. 15 (1952), and United States v. Berry, 6 C.M.A. 609, 20 C.M.R. 325 (1956), private consensual sexual activity is not punishable as an indecent act absent aggravating circumstances. Snyder, 1 C.M.A. at 427, 4 C.M.R. at 19; Berry, 6 C.M.A. at 614, 20 C.M.R. at 330. One such aggravating circumstance is that the sexual activity is “open and notorious,” which includes when the participants know that someone else is present. United States v. Izquierdo, 51 M.J. 421, 422 (C.A.A.F.1999); Berry, 6 C.M.A. at 614, 20 C.M.R. at 330.
Appellant does not dispute that the offense of indecent acts with another, as proscribed under Article 134, UCMJ, and as limited by this Court’s precedent, is facially constitutional. Instead, he appears to argue that the statute is unconstitutional as applied to him, Brief for Appellant at 12-18, United States v. Goings (C.A.A.F. July 20, 2012) (No. 11-0547), despite failing to object at trial on this ground.[3] Since the error Appellant now alleges is constitutional, and in light of this Court’s (1) “presumption against the waiver of constitutional rights” and (2) requirement that a waiver “clearly establish[ ] ... an intentional relinquishment of a known right or privilege,” United States v. Sweeney, 70 M.J. 296, 303-04 (C.A.A.F.2011) (quoting United States v. Harcrow, 66 M.J. 154, 157 (C.A.A.F.2008)), we consider the alleged error forfeited, and not waived. We therefore review for plain error. Id. at 304.[4]
B.
We review whether a statute is unconstitutional as applied de novo. United States v. Ali, 71 M.J. 256, 265 (C.A.A.F.2012). To determine if “a statute is ‘unconstitutional as applied,’ we conduct a fact-specific inquiry.” Id. Upon plain error review, to prove that Article 134, UCMJ — a facially constitutional criminal statute — is unconstitutional as applied to him, Appellant must point to particular facts in the record that plainly demonstrate why his interests should overcome Congress’ and the President’s determinations that his conduct be proscribed. See United States v. Vazquez, 72 M.J. 13, 16-21 (C.A.A.F.2013); Ali, 71 M.J. at 266. Appellant fails to meet this burden.
There is no question that Appellant’s rights as a member of the military are not coextensive with those enjoyed by civilians. See Parker v. Levy, 417 U.S. 733, 758, 94 S.Ct. 2547, 41 L.Ed.2d 439 (1974) (upholding the constitutionality of Article 134, UCMJ, and observing that “[t]he fundamental necessity for obedience, and the consequent necessity for imposition of discipline, may ren *206 der permissible within the military that which would be constitutionally impermissible outside it”). And no one asserts that the interest recognized in Lawrence is somehow exempt from adaptation to the military environment. See United States v. Marcum, 60 M.J. 198, 207 (C.A.A.F.2004) (in the context of an as-applied challenge under Lawrence, requiring consideration of whether there are “additional factors relevant solely in the military environment that affect the nature and reach of the Lawrence liberty interest”). Consonant with his authority to act as commander-in-chief and his duty to “take care that the laws be faithfully executed,” U.S. Const, art. II, §§ 2-3, the President has listed indecent acts with another as a “way[ ] in which Article 134, UCMJ, might be charged,” United States v. Jones, 68 M.J. 465, 472 (C.A.A.F.2010). See also United States v. Miller, 47 M.J. 352, 356 (C.A.A.F.1997); United States v. Gonzalez, 42 M.J. 469, 474 (C.A.A.F.1995). The commission of sexual acts in the presence of a third party has been held to be sufficiently “open and notorious” to constitute an indecent act, punishable under Article 134, UCMJ, see Izquierdo, 51 M.J. at 422-23 (C.A.A.F.1999) (“[An] act is ‘open and notorious’ ... when the participants know that a third person is present.” (citing Berry, 6 C.M.A. at 614, 20 C.M.R. at 330)), and we do not doubt that permitting the filming of those same acts is also sufficient. Cf. United States v. Cohen, 63 M.J. 45, 53 (C.A.A.F.2006) (holding that Article 31(b), UCMJ, 10 U.S.C. § 831(b) rights warnings were required when the appellant described his role in photographing a sexual assault).[5] Congress’ and the President’s determination to proscribe such act's that are “to the prejudice of good order and discipline” or “of a nature to bring discredit upon the armed forces,” Article 134, UCMJ; MCM, pt. IV, para. 90.b. (2005 ed.), no doubt furthers the military’s unique interest in obedience and discipline, see Levy, 417 U.S. at 758, 94 S.Ct. 2547, which Marcum recognized as affecting the nature and reach of Lawrence. See Marcum, 60 M.J. at 206-07.
Here, Appellant was convicted of “allowing [a third party] to be present and video record on a video cassette tape [Appellant] engaging in sexual intercourse with [a] female,” and legally sufficient evidence was adduced at trial that this conduct was prejudicial to good order and discipline and service discrediting. No one disagrees that wholly private and consensual sexual activity, without more, falls within Lawrence. But that does not answer the altogether different question whether permitting a third party to observe and memorialize one’s sexual activity on videotape is categorically protected as “wholly private and consensual sexual activity” where the trier of fact has deemed the conduct to be prejudicial to good order and discipline in the armed forces and service discrediting. We hold that, under the circumstances of this case, it is not.
In Lawrence, the focal point of the constitutional protection involved an act of sexual intimacy between two individuals in a wholly private setting without more. Lawrence, 539 U.S. at 562-63, 123 S.Ct. 2472. Lawrence did not establish a presumptive constitutional protection for all offenses arising in the context of sexual activity. See Lawrence, 539 U.S. at 578, 123 S.Ct. 2472 (noting that “[t]he present case d[id] not involve minors[,] ... persons who might be injured or coerced or who are situated in relationships where consent might not easily be refused[,] ... public conduct[,] or prosti *207 tution”); Marcum, 60 M.J. at 206-07 (recognizing that consideration of military interests affect the nature and reach of Lawrence)', United States v. Lebowitz, 676 F.3d 1000, 1012 n. 5 (11th Cir.2012) (holding Lawrence “immaterial” to its analysis because “[e]ven if Lawrence protected the sexual conduct depicted on the video tape, ... the depictions ... traveled across state lines by means of computer” and became “publicly traded contraband”). When the conduct being charged does not fall directly within the focal point of Lawrence — sexual conduct between two individuals in a wholly private setting that was criminal for no other reason than the act of the sexual conduct itself — and where, as here, the predicate sexual conduct is criminal because of some additional factor (in this case, the violation of clauses 1 and 2 of Article 134, UCMJ), the burden of demonstrating that such conduct should nonetheless be constitutionally protected rests with the defense at trial. See Vazquez, 72 M.J. at 16-21; Ali, 71 M.J. at 266. Put another way, to show that a facially constitutional statute is unconstitutional as applied to a particular individual, the individual must develop facts at trial that show why his interest should overcome the determination of Congress and the President that the conduct be proscribed. See Vazquez, 72 M.J. at 16-21; Ali, 71 M.J. at 266. Here, the defense did not raise such an issue at trial or develop such facts in a motion proceeding. In that context, the military judge did not commit error, let alone plain and obvious error, in failing to sua sponte raise a Lawrence issue.
C.
We now turn to the question whether Specification 6 fails to state an offense because it does not allege the terminal element of Article 134, UCMJ. As we held in Fosler, a contested case involving an Article 134, UCMJ, offense, the terminal element must be pleaded or fairly implied, and the allegation of the act itself is insufficient to support a fair implication of the terminal element. Fosler, 70 M.J. at 229-31. Yet the ACCA, on remand for consideration of the issue in light of Fosler, determined that the error did not prejudice Appellant because “the charge and its specification can be reasonably construed to imply [the terminal element].” Goings, No. ARMY 20080602, slip op. at 2 n. 2. After examining Specification 6, it is clear that Fosler foreclosed the line of reasoning upon which the ACCA based its determination. Article 134, UCMJ, has two elements: (1) a predicate act or failure to act, and (2) a terminal element. United States v. Medina, 66 M.J. 21, 25 (C.A.A.F.2008). The terminal element of an Article 134, UCMJ, offense may not be “fairly implied” from nothing more than the language describing the alleged act or failure to act itself.[6] Fosler, 70 M.J. at 230-31.
This, however, does not end the inquiry as Appellant, unlike the accused in Fosler, failed to object to the specification on this ground at trial. See Humphries, 71 M.J. at 213. Because Appellant’s trial occurred before this Court’s decision in Fosler, we deem his failure to object as forfeiting, rather than waiving, the underlying right and apply plain error analysis. Id. at 211, 213.
Here, it was plain and obvious error for the Government not to allege the terminal element. Id. at 211, 214. “Having found plain and obvious error that was forfeited rather than waived, the remaining question is ‘whether there is a remedy for the error,’ which ‘will depend on whether the error has prejudiced the substantial rights of the accused.’” Id. at 215 (quoting United States v. Ballan, 71 M.J. 28, 30 (C.A.A.F. 2012)). In the context of a defective specification, the prejudice analysis “demand[s] close review of the trial record.” Humphries, 71 M.J. at 215. “[W]e look to the record to determine whether notice of the missing element is somewhere extant in the trial record, or whether the element is ‘essentially uncontroverted.’ ” Id. at 215-16 (quoting United States v. Cotton, 535 U.S. 625, 633, 122 S.Ct. 1781, 152 L.Ed.2d 860 *208 (2002), and Johnson v. United States, 520 U.S. 461, 470, 117 S.Ct. 1544, 137 L.Ed.2d 718 (1997)).
While up to this point we have left Hum-phries’ fact-intensive prejudice analysis to the Courts of Criminal Appeals (CCAs), and despite the fact that we would ordinarily return the record of trial in this ease to the Judge Advocate General of the Army for remand to the ACCA for consideration in light of Humphries, we undertake it here for two reasons. First, in order to resolve Issue I, this Court had to conduct a fact-intensive analysis of the record to determine whether the military judge’s failure to raise a Lawrence issue was plain and obvious error. Second, it appears that there is some misper-ception that, under Humphries, a conclusion that the government’s error in failing to allege the terminal element was nonprejudieial may be based on the same flawed logic that we rejected in Foster and Humphries. See United States v. Allbery, 44 M.J. 226, 228 (C.A.A.F.1996).
Finding sufficient notice of the terminal element — and thus no prejudice — on such bases as: (1) witness testimony describing the act or failure to act that meets Article 134, UCMJ’s, first element; (2) the government’s identification of its theory of criminality during its closing argument; (3) evidence of defense counsel’s general awareness of the terminal element; or (4) findings instructions that require the panel to find the terminal element beyond a reasonable doubt in order to convict, without more, is error under both Foster and Humphries. That: (1) the evidence was legally sufficient to prove the terminal element; (2) defense counsel demonstrated a general knowledge of the law, and (3) the government’s theory of criminal liability was introduced during closing or through findings instructions do not answer the altogether different question whether the record sufficiently demonstrates that an accused was on notice as to which clause or clauses of the terminal element he needed to defend against. Humphries, 71 M.J. at 216 n. 8. It is this latter question that determines whether an appellant was prejudiced.
In Humphries, we found prejudice where “[n]either the specification nor the record provide[d] notice of which terminal element or theory of criminality the Government pursued in th[at] ease.” Id. at 216.[7] Here, however, we find no prejudice because the record clearly demonstrates that Appellant (1) was put on notice that the Government intended to prove that his conduct was both prejudicial to good order and discipline and service discrediting and (2) defended himself against those theories of guilt.
In its opening statement, the Government stated that it would call First Sergeant (Sgt) Perkins, who would “testify ... that these videos and these actions are prejudicial to good order and discipline.” During its casein-chief, the Government presented the testimony of First Sgt Perkins, who testified that Appellant’s conduct portrayed in the videotape was prejudicial to good order and discipline. On cross-examination, defense counsel challenged this testimony. On redirect examination, First Sgt Perkins then testified as to why the conduct was service discrediting. Again, this testimony was challenged by defense counsel on recross-examination.
Next, the Government presented the testimony of Sergeant First Class (SFC) Oliva-rez, who testified that Appellant’s conduct was both prejudicial to good order and discipline and service discrediting. Defense counsel again challenged this testimony on cross-examination.
During closing argument, Appellant summed up his vigorous defense against the terminal element of Article 134, UCMJ, arguing that the evidence was legally insufficient to prove the charged offense because there was no evidence that the unidentified male and female in the recording knew that Appellant was a servicemember, and, therefore, the conduct could not (1) “bring[ ] a bad *209 light on the military,” or (2) “be bad [for] the unit” or undermine Appellant. Defense counsel argued that the Government failed in its attempt to prove the terminal element through the testimony of First Sgt Perkins and SFC Olivarez.
The evidence, as contained in the trial record, demonstrates that Appellant was not only provided “notice of which terminal element or theory of criminality the Government pursued in this case,” Humphries, 71 M.J. at 216, but vigorously defended against it.
IV. DECISION
The decision of the United States Army Court of Criminal Appeals is affirmed.

. We granted review of the following issues:
I. WHETHER LAWRENCE v. TEXAS EXTENDS A ZONE OF PRIVACY TO THE INDECENT ACT OF WHICH APPELLANT WAS CONVICTED.
II. WHETHER SPECIFICATION 6 OF CHARGE II FAILS TO STATE AN OFFENSE BECAUSE IT DOES NOT EXPRESSLY ALLEGE OR NECESSARILY IMPLY THE TERMINAL ELEMENT OF ARTICLE 134, UCMJ.
United States v. Goings, 71 M.J. 334 (C.A.A.F.2012) (order granting review).

. The videotaping occurred "prior to October 1, 2007, the effective date of the amendments to the UCMJ and [MCM] made by the National Defense Authorization Act for Fiscal Year 2006, Pub.L. No. 109-163, § 552, 119 Stat. 3136, 3256-63 (2006), so [the offense was] properly charged under Article 134, UCMJ. See MCM, Punitive Articles Applicable to Sexual Assault Offenses Committed Prior to 1 October 2007 app. 27 at A27-2 (2008 ed.).” United States v. Rose, 71 M.J. 138, 140 n. 3 (C.A.A.F.2012).

. From start to finish, the contested issue in the case was whether Appellant's conduct met the terminal element of Article 134, UCMJ. Appellant argued that his conduct was insufficient to meet the terminal element, in part, because, in his view, his conduct would be constitutionally protected in a non-military setting. The trier of fact disagreed, and the ACCA concluded that the evidence was legally sufficient. Goings, No. ARMY 20080602, slip op. at 1. What amounts to an argument that the Government has not put forth legally sufficient evidence to support an Article 134, UCMJ, conviction is fundamentally different from a constitutional argument that, in the military context, Appellant's conduct is protected.

.“Under plain error review, this Court will grant relief only where (1) there was error, (2) the error was plain and obvious, and (3) the error materially prejudiced a substantial right of the accused.” Sweeney, 70 M.J. at 304.

. Additionally, that Appellant's conviction is supported by legally sufficient evidence is particularly true in light of the low evidentiary threshold that this Court has applied to Article 134, UCMJ's terminal element. See United States v. Phillips, 70 M.J. 161, 163 (C.A.A.F.2011) ("evidence that the public was actually aware of the conduct is not necessarily required” to support clause 2 of Article 134, UCMJ’s, terminal element); United States v. Irvin, 60 M.J. 23, 26 (C.A.A.F.2004) (finding a sufficient factual basis to support clause 1 and clause 2 of Article 134, UCMJ's, terminal element despite no evidence that any other servicemembers were aware of, or saw, the child pornography). To the extent we should revisit the question whether a more exacting standard of proof should be required to support the terminal elements of Article 134, UCMJ, we leave that issue for a case in which it is properly raised and briefed. See, e.g., United States v. Wilcox, 66 M.J. 442, 448-49 (C.A.A.F. 2008) (requiring a more exacting standard in the context of the First Amendment).

. Moreover, the inclusion of the word "wrongfully” in Specification 6 "cannot of itself imply the terminal element.” Fosler, 70 M.J. at 230.

. We noted that the government failed to (1) mention in its opening statement "how [a]ppel-lee's conduct satisfied either clause 1 or 2 of the terminal element,” (2) "present any specific evidence or call a single witness to testify as to why [alppellee’s conduct satisfied” the terminal element, or (3) make any "attempt to tie any of the evidence or witnesses that it did call to the Article 134, UCMJ,” charge. Id.